# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| EDWARD STARLING and KAREN STARLING | ) | No. 05 B 53919 |
| | ) | |
| Debtor. | ) | |

## MEMORANDUM OPINION ON DEBTORS' MOTIONS TO VACATE DISCHARGE AND CONVERT TO CHAPTER 13 AND ON TRUSTEE'S MOTION TO RECONVERT

Debtors' Edward and Karen Starling (the "Debtors") filed their combined motion to convert this Chapter 7 case to Chapter 13 and vacate the discharge entered in the Chapter 7 case. Chapter 7 Trustee Philip Levey (the "Trustee") opposed that motion, and in the alternative moved that Debtors' case be reconverted to Chapter 7 should conversion from Chapter 7 to Chapter 13 be permitted. The Trustee wants to sell their home which is found to have equity not reflected in an appraisal that Debtors obtained before filing their case.

By order entered December 7, 2006, over the Trustee, objection to the Debtors' motion to vacate their discharge order and convert to a Chapter 13 case was allowed, and the Trustee's Motion to Reconvert was denied. This Opinion sets forth the grounds for those rulings.

## FINDINGS OF FACT

Apart from a dispute over value of the home which was resolved by evidence hearing, the relevant facts are not in dispute:

With the assistance of counsel, the Debtors filed a petition for Chapter 7 bankruptcy relief on October 14, 2005. Their Schedule D listed secured claims totaling $104,729.53. Total general unsecured claims were listed on Schedule F at $49,160.63.

Included among their assets, and listed accordingly on Schedule A, is real property used as the Debtors' homestead and commonly known as 8030 S. Woodlawn, Chicago, IL. Based on an appraisal obtained from a real estate brokerage firm pre-bankruptcy and dated October 11, 2005, the Debtors listed "$104,000" as the real estate's then current market value on Schedule A. The Debtors' schedules further reflect that the property was secured by a $93,000 mortgage note, thus apparently leaving the Debtors with $11,000 of equity in the property. As allowed under Illinois law applicable when the bankruptcy was filed, 735 ILCS 5/12-901, the Debtors claimed their homestead exemptions then totaling $15,000. Therefore, initially there appeared no possibility that the real estate could be used to satisfy unsecured claims of creditors.

Chapter 7 Trustee Phillip Levey ("Trustee") was assigned to the Debtors' case by the United States Trustee for this region. The first meeting of creditors was scheduled to be held on February 1, 2006. Without objection to discharge or other litigation issues being raised by Trustee or other creditors and without any effort being made by the Trustee for several months to sell the home, Debtors were granted a discharge under § 727 of the Bankruptcy Code on April 10, 2006.

At some point prior to June 2006, but apparently after the discharge had entered, the Trustee had the Debtors' real property appraised for an approximate market value of $225,000 to $235,000. Pursuant to an application filed by the Trustee, an order was entered June 8, 2006 authorizing him to employ a real estate brokerage firm to market the property for sale. Notice of that motion was the first information received by Debtors of Trustee's contention that their home was worth much more than they had known or believed, since they had relied on the pre-bankruptcy appraisal.

The foregoing sequence of events is quite unusual in Chapter 7 cases because the Chapter 7 Trustees will usually proceed against the homestead real estate of debtors before the discharge issues. The usual response of Chapter 7 debtors who want to keep their home is to seek conversion

-2-

to a Chapter 13 in an effort to save the home, or they sometimes obtain funds from family or lenders to buy out the trustee's interest in recovering equity for the creditors. Mr. Levy is among the most diligent of Chapter 7 panel trustees, and his delay in proceeding against the home until the discharge had entered was likely due his heavy work load. Whatever the reason, this circumstance has resulted in a situation where Debtors are now struggling to overcome several hurdles before they can save their home through a Chapter 13 Plan.

They initially thrashed about in efforts to prevent sale of their home or even to permit it to be shown by the Trustee's broker. Pursuant to a motion filed by the Trustee, an order was entered June 22, 2006 requiring the Debtors to cooperate with the Trustee and his agents in marketing and selling the real estate. The order further even authorized the Trustee to change the locks on the premises in the event the Debtors failed to cooperate. The Debtors continued with some efforts to slow Trustee and the broker's efforts to sell the property. An additional order was entered October 10, 2006 compelling the Debtors' particularized cooperation.

On August 20, 2006, a motion to substitute the Debtors' original counsel with their present counsel was filed and allowed by order entered September 15, 2006. Under the guidance of new counsel, the Debtors tried to use the law to solve the problem. They moved on August 21, 2006, to convert their case from a Chapter 7 case to a Chapter 13 case and to have the Chapter 7 discharge vacated.

On October 5, 2006, an evidence hearing concerning the property's value was held. After considering evidence presented by the Parties, a ruling was issued from the bench that the subject real estate has a value of $200,000. (Trial Tr., 14, Oct. 27, 2006.) The Trustee obtained evidence that the unpaid balance of the mortgage held against the property was about $89,000 as of October 3, 2006. It thereby became apparent that Debtors' have significant net equity in their home, in the

-3-

range of $84,000 ($200,000 less broker's fee of $12,000, mortgage of $89,000, and homestead exemptions of $15,000).

Following further hearing on the pending motions and remaining issues, a decision was announced from the bench on December 7, 2006, that for reasons to be set forth in this opinion , the Debtors' discharge would be vacated, their request to convert from Chapter 7 to Chapter 13 would be granted, and Trustee's motion to reconvert would be denied. However this relief was to be conditioned upon the Debtors compensating the Trustee for services he rendered in trying to market and sell the property. The Trustee was granted leave to submit a fee application based on his efforts to market and sell the property.

The Trustee filed an application for compensation and reimbursement for expenses, requesting $8,937.50 for 27.5 hours of services performed while acting in the capacity of legal counsel for himself as Trustee and reimbursement of $24.60 for actual expenses. Although the Debtors raised objections to the application, the Parties stated during a hearing held on November 30, 2006 that agreement had been reached whereby the Trustee's fee application would be granted in full and paid as a cost of administration following conversion. The agreement additionally provided that the Trustee shall not be entitled to receive any fees for additional services rendered as the Chapter 7 trustee unless the Debtors case is re-converted from a Chapter 13 to a Chapter 7. If the case is reconverted, the Trustee will be entitled to seek and receive whatever fees and costs are prescribed under § 330 of the Bankruptcy Code. An agreed order reflecting this agreement was entered on December 8, 2006.

Any further facts set forth below in the Conclusions of Law are to be regarded as additional Findings of Fact.

## CONCLUSIONS OF LAW[1]

### JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the bench pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) and District Court Internal Operating Procedure 15(a). Venue is proper under 28 U.S.C. § 1409(a).

### Issues

In support of their request to convert their case from a Chapter 7 to a Chapter 13, the Debtors rely on § 706(a) of the Bankruptcy Code. While the Debtors argued that revocation of their discharge is not necessary to facilitate the conversion, they additionally moved to have the discharge vacated.

The Trustee raised several points in response. First, he argues that a Chapter 7 case cannot be converted to a Chapter 13 case once a discharge has been entered. The Trustee reasons that absent a debtor's liability on the discharged claims, there is nothing to repay under a Chapter 13 plan. On the question of whether the Debtors can move to vacate the discharge, the Trustee argues that the Debtors lack standing under § 727(d) of the Code to move for such relief. The Trustee additionally contends that a bankruptcy court cannot rely on whatever equitable powers it may possess to override the specific designations of § 727(d) as to who may move to revoke a discharge, and therefore cannot grant the Debtors' request to vacate the Chapter 7 discharge. However if the case is converted, the Trustee alternatively moved to have the case reconverted to a Chapter 7.

---

[1] Analysis and conclusions of law issued in this matter are based on Title 11 of the United States Code in effect prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 because this Bankruptcy case was filed prior to the effective date of that Act.

## A.    Conversion from Chapter 7 to Chapter 13

A decision as to whether the Debtors have a statutory right to convert their Chapter 7 case into a Chapter 13 case is guided, in part, by § 706 of the Bankruptcy Code. Debtors may convert a Chapter 7 case "to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under Section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). However, "[n]otwithstanding any other provision of [Section 706], a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d).

The legislative history associated with § 706 states that it was designed to give "[t]he debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case." H.R. Rep. No. 95-595, at 380 (1977); S. Rep. 95-989, at 94 (1978). Moreover, "[t]he policy of the provision is that the debtor should always be given the opportunity to repay his debts." Id. The question of whether a qualified debtor has an unqualified right under § 706 to convert "at any time" a case from Chapter 7 into Chapter 13 has been addressed in varying degrees by a number of courts. See In re Salem, 465 F.3d 767, 775-76 (7th Cir. 2006) (collecting cases).

One line of cases point to the "plain language" of § 706(a) to support the position that a debtor possesses an absolute right to convert a Chapter 7 case into a Chapter 13 case. Some of those opinions hold that such a right may be exercised even after discharge has been entered. See e.g., Pequeno v. Schmidt (In re Pequeno), 126 Fed. Appx. 158 (5th Cir. 2005) (unpublished); Mason v. Young (In re Young), 237 F.3d 1168 (10th Cir. 2001); In re Oblinger, 288 B.R. 781 (Bankr. N.D. Ohio 2003); In re Mosby, 244 B.R. 79 (Bankr. E.D. Va. 2000); In re Porras, 188 B.R. 375 (Bankr. W.D. Tex. 1995). These opinions find no need for a good faith showing to justify conversion since the right to convert to Chapter 13 is named as absolute. See generally, Young, 237 F.3d at 1173-74.

-6-

Other courts have recognized an absolute right to convert but permit its denial when "extreme circumstances" exist. See e.g., Martin v. Martin (In re Martin), 116 F.3d 840 (5th Cir. 1997); Finney v. Smith (In re Finney), 992 F.2d 43, 45 (4th Cir. 1993); Miller v. Miller (In re Miller), 303 B.R. 471 (B.A.P. 10th Cir. 2003); In re Spencer, 137 B.R. 506 (Bankr. N.D. Okla. 1992); In re Carter, 285 B.R. 61 (Bankr. N.D. Ga. 2002); In re Krishnaya, 263 B.R. 63 (Bankr. S.D.N.Y. 2001).

A separate group of cases impose a "good faith" requirement on the debtor before a Chapter 7 can be converted. See e.g., Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474 (1st Cir. 2005), cert. granted 126 S.Ct. 2859 (June 12, 2006); In re Pakuris, 262 B.R. 330 (Bankr. E.D. Pa. 2001); In re Thornton, 203 B.R. 648 (Bankr. S.D. Ohio 1996). See also Cooper v. Cooper (In re Cooper), 426 F.3d 810 (6th Cir. 2005) (Court held that there is no absolute right to convert and conversion can be denied in the absence of good faith).

Entry of the Chapter 7 discharge prior to Debtors' efforts to convert raises a sharper issue. Many bankruptcy judges have held that a Chapter 7 discharge precludes a debtor from exercising any § 706 right to convert. See e.g., In re Markovich, 207 B.R. 909 (B.A.P. 9th Cir. 1997); In re Carrow, 315 B.R. 8 (Bankr. N.D.N.Y. 2004); In re Gallagher, 283 B.R. 604 (Bankr. M.D. Fla. 2002); In re Caruso, 272 B.R. 254 (Bankr. D. Neb. 2001); In re Marcakis, 254 B.R. 77 (Bankr. E.D.N.Y. 2000); In re Lesniak, 208 B.R. 902 (Bankr. N.D. Ill. 1997); In re Hauswirth, 242 B.R. 95 (Bankr. N.D. Ga. 1999); In re Jeffrey, 176 B.R. 4 (Bankr. D. Mass. 1994); In re Wyciskalla, 156 B.R. 579 (Bankr. S.D. Ill. 1993); In re Kilker, 155 B.R. 201 (Bankr. W.D. Ark. 1993); In re Tardiff, 145 B.R. 357 (Bankr. D. Me. 1992); In re Safley, 132 B.R. 397 (Bankr. E.D. Ark. 1991); In re Jones, 111 B.R. 674 (Bankr. E.D. Tenn. 1990).

The issue as to whether the right of conversion to Chapter 13 is absolute or limited is before the Supreme Court during its current term when it rules on the appeal in <u>Marrama v. Citizens Bank</u> <u>(In re Marrama)</u>, 430 F.3d 474 (1st Cir. 2005), <u>cert.</u> <u>granted</u> 126 S.Ct. 2859 (June 12, 2006) (No. 05-996). Oral argument on the issue was conducted on November 6, 2006. However, the issue of effect of entry of the discharge order prior to an attempted conversion is not understood to be presented in that case. Therefore, even if determination is made in <u>Marrama</u> that Debtors possess an absolute right to convert their Chapter 7 case into a Chapter 13 case, that will not likely resolve the question of whether the Debtors in this case can subject their now discharged Chapter 7 debts to a Chapter 13 plan of reorganization. Therefore, it does not appear appropriate to await the <u>Marrama</u> decision.

While the Seventh Circuit has not specifically addressed the issue of whether a debtor may maintain a Chapter 13 case that concerns debts discharged in a previous Chapter 7 case, it did address the question of "whether [a debtor is] entitled to maintain a Chapter 13 proceeding while a Chapter 7 proceeding involving the same debts [is] pending." <u>In re Sidebottom</u>, 430 F.3d 893, 896 (7th Cir. 2005). The Court termed the situation a "simultaneous Chapter 20" and distinguished it from a serial or sequential "Chapter 20" (i.e., the filing of a Chapter 13 upon the conclusion of a Chapter 7) or the type of situation presented to the Tenth Circuit Court in <u>Young</u> where the case was "fully converted from a Chapter 7 proceeding to a chapter 13 proceeding." 430 F.3d at 898. In <u>Sidebottom</u>, the debtor filed a Chapter 13 petition after receiving a discharge in a Chapter 7 case, but prior to closing of that case. The new case listed debts that had been included in the Chapter 7. <u>See</u> <u>id.</u> at 895-96. Included was a debt that was the basis of a non-dischargeability adversary proceeding still pending in the Chapter 7 case at the time the Chapter 13 was filed. The resulting Circuit opinion relied, in part, on the Supreme Court's decision in <u>Freshman v. Atkins</u>, 269 U.S. 121

-8-

(1925), which stated a general rule prohibiting existence of two suits at the same time for the same cause. <u>Sidebottom</u> held that a debt that is expressly excluded from a general discharge under Chapter 7 may not be simultaneously litigated in a separate Chapter 13 case. <u>See</u> <u>id.</u> at 898-99 (citing the rule advocated in <u>In re Turner</u>, 207 B. R. 373 (B.A.P. 2d Cir. 1997), that simultaneous proceedings over a debt that was excluded from Chapter 7 discharge are not allowed).

Converting a Chapter 7 case into a Chapter 13 does not necessarily result in "simultaneous" cases based on the same debts. However, the present situation raises issues more akin to a serial or sequential Chapter 20 that was addressed by the Supreme Court in <u>Johnson v. Home State Bank</u>, 501 U.S. 78 (1991). The key difference between both situations is that the act of conversion does not create an additional case requiring separate administration due to the existence of a newly created bankruptcy estate. No new estate is created when a case is converted from one chapter to another prior to discharge. Instead, the conversion simply results in the Chapter 7 trustee being supplanted by a Chapter 13 trustee and the debtor incurring new responsibilities. Absent the filing of a "separate" bankruptcy case, prior to the discharge, the possibility that a debt could be "simultaneously" litigated in the bankruptcy forum is not presented.

But once the discharge has been entered prior to conversion, it is questionable whether the same discharged debts can be discharged twice -- once in the Chapter 7 case and then again in the Chapter 13 case. That possibility would appear to be barred by principles of <u>res judicata</u>. <u>See generally</u> <u>Highway J Citizens Group v. U.S. Dept. of Transp.</u>, 456 F.3d 734, 741 (7th Cir. 2006) ("[T]he doctrine of <u>res judicata</u> provides that, when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that

purpose."). The legal analysis in <u>Sidebottom</u> indicates that discharged debts cannot be repaid through a Chapter 13 simultaneous or even converted case. The Bankruptcy Code points to the same conclusion.

Section 109(e) of the Code states, in part, that "[o]nly an individual with regular income <u>that owes</u>, on the date of the petition, <u>noncontingent</u>, <u>liquidated</u>, <u>unsecured debts</u> . . . may be a debtor under chapter 13." (emphasis supplied). The term "debt" is defined in the Code as a "liability on a claim." <u>See</u> 11 U.S.C. § 101(12). A "claim" is defined, in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.A. § 101(5). <u>See also</u> <u>Johnson</u>, 501 U.S. at 83 ("[P]lain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation. . . . ")

The purpose of a Chapter 13 case is to provide a means by which a debtor can repay all or part of his debts owed to his creditors over an extended period of time. <u>See</u> <u>In re Aberegg</u>, 961 F.2d 1307, 1309-10 (7th Cir. 1992); <u>In re Schaitz</u>, 913 F.2d 452, 454 (7th Cir. 1990). The problem created here by the Debtors' Chapter 7 discharge is that they are no longer personally liable for the debts that they are now proposing to repay in a Chapter 13 plan. 11 U.S.C. § 524(a)(1). <u>See also</u> <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 84-85 (1991) (holding that <u>in rem</u> actions against a debtor are not discharged in a Chapter 7); <u>Cooper v. Walker (In re Walker)</u>, 151 B.R. 1006, 1008 (Bankr. E.D. Ark.1993) ("Of course, while the discharge extinguishes <u>personal liability</u> of the debtor, the discharge does not in fact extinguish the debts themselves. Discharge of the debtor does not eradicate <u>in rem</u> liability which may exist against assets, nor liability of third persons ...") (citations omitted).

A common argument voiced in opposition to allowing post-discharge conversions to Chapter 13 is that the debtor has been permitted to "cheat the system" by extinguishing personal liability on claims without having to turn-over non-exempt assets for liquidation and distribution to claimants against the estate. See David M. Guess, Exposing the Convert' Loophole: Postdischarge Conversion as An Abuse of the Bankruptcy Process, 2005 Ann. Surv. of Bankr. Law Part I § 19, (September 2006). The end result is said to be that the debtor is able to receive a windfall to the detriment of creditors that had their claims discharged in addition to the possibility of receiving a second discharge in the same case. See In re Rigales, 290 B.R. 401, 407 (Bankr. D. N.M. 2003) ("When a debtor converts to Chapter 13 after the Chapter 7 discharge, but before the estate property is liquidated, he has received all of the benefits of Chapter 7 without any of the burdens, because he regains his nonexempt property, and his debts have all been discharged."); and In re Hauswirth, 242 B.R. 95, 97 (Bankr. N.D. Ga. 1999) ("Nothing in the Bankruptcy Code or case law, however, provides a debtor the right to receive two discharges in a single case. The provisions of § 524 and § 727 are inconsistent with receiving both a Chapter 7 discharge and a Chapter 13 discharge in the same case. . . . To collapse the two proceedings into one, however, is inimical to the structure of the Bankruptcy Code.").

Because the effect of a discharge is to extinguish a debtor's personal liability with respect to any dischargeable debt, "only those debts not discharged and secured debts are surviving claims which may be included in [a Chapter 13 plan]." Safley, 132 B.R. at 399-400. See also U.S. v. Frontone, 383 F.3d 656, 657-58 (7th Cir. 2004) (noting that debtors can file a Chapter 13 after receiving a discharge of dischargeable unsecured debts in a Chapter 7 in order to repay remaining

non-dischargeable unsecured debts along with secured debts). Absent a creditor[2] holding some "right to payment" from the Debtors, there is no "claim" that could be subject to a Chapter 13 reorganization plan.[3] Because the creditors that had their claims discharged in the Chapter 7 no longer have any right to receive payment under a Chapter 13 plan or the right to objection to confirmation, the debtor "no longer has any meaningful debts to repay pursuant to a Chapter 13 plan." Marcakis, 254 B.R. at 82. See also Rigales, 290 B.R. at 401 (holding that "all dischargeable debts are wiped out by the Chapter 7 discharge. Those creditors' claims are wiped out and, therefore, are not included in the Chapter 13 plan."). As stated by a bankruptcy judge in Lesniak:

> In order to have debts to repay [in a Chapter 13 case], debts must exist. If a discharge order is entered, and the automatic stay vacated as to secured creditors, a logical assumption is that debts no longer exist for the debtor to repay. (Footnote omitted). Thus, it is possible no claim would be filed in a converted Chapter 13.

208 B.R. at 905.

Therefore, it must be concluded that the Debtors' Chapter 7 discharge must be set aside if they wish to subject the debts listed in their Chapter 7 case to terms of a Chapter 13 plan. See Safley, 132 B.R. at 399-400 ("If a debtor has been granted a discharge in a Chapter 7 and does not

---

[2] A creditor is defined under the Code to mean:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or
(C) entity that has a community claim.

11 U.S.C.A. § 101(10).

[3] At least one court holds the position that discharged debts may be paid in a Chapter 13 plan. In Mosby, the court stated in dictum that "there is no conceptual reason why a debtor could not propose to pay a discharged debt-even one discharged in a prior case-as long as such payment did not diminish the dividend that would otherwise be paid to creditors whose claims had not been discharged." 244 B.R. at 87 n.13. The court's conclusion was premised, in part, on a Section 524(f) of the Code ("Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."). See id. It must be questioned, however, whether discharged debts may be repaid through a Chapter 13 plan when they would fallen outside the Code's definition of the type of "debt" that would amount to a "claim" that could be paid by a Chapter 13 trustee.

seek to set the discharge aside . . . it follows that only those debts not discharged and/or secured

debts are the surviving claims which may be included in a payment plan pursuant to Chapter 13.").

To find some right to maintain a Chapter 13 case to resolve or pay the same debts already discharged

in Chapter 7, one must go through a strained re-creation of the Bankruptcy Code into a form of

proceedings not actually provided for by statute.

**B.**      **Vacation of Discharge**

Although the Debtors request that their Chapter 7 discharge be vacated, they do not specify

a particular statute or rule of procedure to aid in a determination of whether such relief is proper.

Section 727(d) of the Code permits a court to revoke a Chapter 7 discharge "[o]n request of the

trustee, a creditor, or the United States Trustee . . ." if certain specified wrongs or omissions are

shown. 11 U.S.C.A. § 727(d). That statute does not say that revocation may <u>only</u> be on request of

those parties, but neither does that or any provision specify that a debtor may apply for vacation of

the discharge order.

Because § 767(d) foregoing statutory language does not specify a debtor to be a party with

standing to request vacation of the discharge order, some opinions have held that a debtor lacks

standing under § 727(d) to move to have a discharge vacated. See <u>Markovich,</u> 207 B.R. at 911; <u>In</u>

<u>re Aden,</u> 237 B.R. 722, 725 (Bankr. N.D. Ill. 1999); <u>Wyciskalla,</u> 156 B.R. at 580. Moreover, it has

been held that bankruptcy judges lack the equitable power necessary to vacate a discharge on their

own volition. See generally <u>In re Morgan,</u> 668 F.2d 261 (7th Cir. 1981) (court held under the former

Bankruptcy Act that bankruptcy courts did not have inherent equitable authority to revoke a

discharge). <u>Accord Markovich,</u> 207 B.R. at 913 (Bankruptcy Appellate Panel held that bankruptcy

court did not have inherent equitable power to revoke a discharge outside the framework of

§ 727(d)).  But see Aden, 237 B.R. at 725 (bankruptcy court concluded that it held "some equitable power" to vacate a discharge under Rule 60(b) of the Federal Rules of Civil Procedure).

### 1.   11 U.S.C. §§ 105(a) Does Not Grant Authority

The weight of precedent holds that authority under 11 U.S.C. § 105(a) does not give authority for revocation of discharge on a debtor's motion.

Authority granted under § 105(a) of the Code that permits courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code may only be exercised "within the confines of the Bankruptcy Code." See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 198 (1988).  A bankruptcy court may not use "its equitable powers to circumvent the law." See In re Greenig, 152 F.3d 631, 635 (7th Cir. 1998) (citing Carlson v. United States, 126 F.3d 915, 920 (7th Cir. 1997)).  Nor does a bankruptcy court "have free-floating discretion,' to create rights outside the Code." In re Lloyd, 37 F.3d 271, 275 (7th Cir. 1994).  See also In re Kmart, 359 F.3d 866, 871 (7th Cir. 2004) ("[T]he power conferred by § 105(a) is one to implement rather than to override."); In re Fesco Plastics Corp., 996 F.3d 152, 154-55 (7th Cir. 1993) ("[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.").

The Seventh Circuit Court of Appeals had an opportunity in Disch v. Rasmussen, 417 F.3d 769 (7th Cir. 2005), to address whether a bankruptcy court's reliance on § 105(a) to vacate a Chapter 7 discharge order was a proper exercise of its equitable power.

In Rasmussen, the debtor received a general discharge in her Chapter 7 case while a creditor's adversary proceeding based on § 523(a) claims was pending. See id. at 773.  During a hearing held in the adversary, the creditor argued for the first time that the debtor did not qualify under § 727 to receive a general discharge of her debts. See id.  After permitting the creditor to

-14-

amend his original pleading to include his § 727 claim, the bankruptcy court found that the debtor did not have a right to a general discharge. See id. at 774. The bankruptcy court, however, recognized that the debtor's conduct did not meet any of the grounds for revocation of the discharge that are set forth in § 727(d). Instead of revoking the discharge under § 727(d), the Bankruptcy Judge revoked the discharge based on purported equitable power under § 105(a). The court also held in the alternative that it had authority under Rule 9024 of the Bankruptcy Rules of Civil Procedure, to revoke the discharge order based on its conclusion that the discharge was issued due to the court's own mistake.

On appeal, the Seventh Circuit panel held that the bankruptcy court's reliance on § 105(a) to revoke the discharge order exceeded the court's equitable authority. The Court stated that the bankruptcy court's "broad interpretation of § 105(a) would make the list of grounds for revoking a discharge found in § 727(d) meaningless; anything not in the list could come in through the back door of § 105(a)." See id. at 778.

While the Seventh Circuit decision in Rasmussen forecloses any court within this Circuit from relying on § 105(a) to vacate a discharge, the opinion pointed out its holding "does not mean that the court was without any authority to set matters rights." Rasmussen, 417 F.3d at 778. It cited Rule 60(b) of Fed. R. Civ. P. which as adopted by Rule 9024 Fed. R. Bankr. P. That Rule allows courts to vacate orders in accordance with the reasons specified therein. Rasmussen, noted that "[f]inal bankruptcy orders can be set aside under Bankruptcy Rule 9024 (citation omitted) and nothing in the rule indicates that it does not apply to the revocation of discharges." See id. (citing In re Cisneros, 994 F.2d 1462, 1466 (9th Cir. 1993)).

-15-

In response to the creditor's argument that using Rule 9024 to vacate a discharge order "is essentially an end-run around the express terms of § 727(d)," <u>Rasmussen</u> found no conflict between its operation and the terms of § 727(d). <u>See id.</u> at 778. The opinion reasoned, in part, that:

> This argument assumes, however, that the standards for relief under Bankruptcy Rule 9024 are identical to those under § 727(d), and this is incorrect. Section 727(d) makes revocation mandatory if the criteria spelled out in that section are satisfied, while Bankruptcy Rule 9024 (like its civil counter-part Rule 60(b)) places a heavy burden on the party seeking to undo an existing judgment. In addition, Bankruptcy Rule 9024 incorporates the one-year time limit for motions under the analog to Rule 60(b)(1), (2), or (3), while § 727(d) has no such built-in deadline . . . . It is reasonable to allow correction on any equitable ground within a short time period, and then to impose stricter restrictions thereafter. A closer look at § 727(d) shows that it creates a two-way street: it gives a *right* to revocation to the trustee, creditor, or United States trustee when fraud is proven, and at the same time it protects the debtor by limiting the circumstances under which the trustee, creditor, or United States trustee has such a right. This limited right of the debtor is not infringed when a court exercises its discretion to reopen an order of discharge for one of the reasons recognized by Bankruptcy Rule 9024.

<u>Id.</u> at 778-79.

Based on the Seventh Circuit's decision in <u>Rasmussen</u>, it is within discretion here to vacate the order of discharge based on one of the reasons listed in Rule 60(b) Fed. R. Civ. P. should any be applicable. As <u>Rasmussen</u>, noted, the standards for relief under § 727(d) and Rule 60(b) are not identical. Moreover, as stated in <u>Rasmussen</u>, § 727(d) "gives a right to revocation to the trustee, creditor, or United States trustee" whereas Rule 60(b) only concerns a "party seeking to undo an existing judgment." Therefore a "party," such as a debtor in bankruptcy, may properly move to vacate a discharge order under Rule 60(b) for one of the reasons recognized therein. <u>See generally</u>, <u>Houck v. Folding Carton Admin. Comm</u>, 881 F.2d 494 (7th Cir. 1989) (holding generally that a "party" or "nonparty" under Rule 60(b) is required to show that his legal interests are affected); <u>National Acceptance Co. of Am., Inc. v. Frigidmeats, Inc.</u>, 627 F.2d 764, 766 (7th Cir. 1980) ("It

is well-settled that [with an exception not relevant here] one who was not a party lacks standing to make (a 60(b)) motion.").

### 2. Expressio Unius Est Exclusio Alterius Does Not Apply to Create an Inference that Congress Intended That Debtor's Lack standing to Move Under § 727(d)

As the Supreme Court made clear on more than one occasion with respect to statutory interpretation, "[w]here the statutory language is clear, our 'sole function . . . is to enforce it according to its terms'." Rake v. Wade, 508 U.S. 464, 471 (1993). Courts are to interpret statutes according to their plain meaning "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242 (1989) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). In such situations, the intention of the drafters, rather than the actual language used in the statute, controls the statute's interpretation. See id. When warranted, courts apply the statutory construction cannon of expressio unius est exclusio alterius, which means that the expression or inclusion of one thing implies the exclusion of all others. See Chevron U.S.A. v. Echazabel, 536 U.S. 73, 80 (2002); In re Globe Building Materials, Inc., 463 F.3d 631, 635 (7th Cir. 2006). But see Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n.23 (1983) (noting that this canon is "subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose."). Moreover, this maxim is only a guide and does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence. Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (citing

-17-

United States v. Vonn, 535 U.S. 55, 65 (2002)). See also S.E.C. v. C. M. Joiner Leasing Corp., 320

U.S. 344, 351 n.8 (1943) (noting that expressio unius est exclusio alterius is "but an aid to

construction."). As the Supreme Court explained in Echazabal:

> Just as statutory language suggesting exclusiveness is missing, so is that essential
> extrastatutory ingredient of an expression-exclusion demonstration, the series of
> terms from which an omission bespeaks a negative implication. The canon depends
> on identifying a series of two or more terms or things that should be understood to
> go hand in hand, which is abridged in circumstances supporting a sensible inference
> that the term left out must have been meant to be excluded. E. Crawford,
> Construction of Statutes 337 (1940) ( expressio unius " 'properly applies only when
> in the natural association of ideas in the mind of the reader that which is expressed
> is so set over by way of strong contrast to that which is omitted that the contrast
> enforces the affirmative inference' " (quoting State ex rel. Curtis v. De Corps, 134
> Ohio St. 295, 299, 16 N.E.2d 459, 462 (1938))); United States v. Vonn, supra.

536 U.S. at 81.

Nothing about the language used in § 727(d) reveals any ambiguity or suggestion that

Congress intended to either include or exclude debtors amongst individuals afforded standing under

that provision. Section 727(d) states that "the trustee, a creditor, or the United States trustee" may

request revocation of a discharge order. See generally Rasmussen, 417 F.3d at 779 (noting that §

727(d) "gives a right to revocation to the trustee, creditor, or United States trustee."). No inference,

either direct or implied, can be made in the noonday that a "debtor" was to be included in or

excluded from this grouping.

The predecessor to § 727(d), Section 15 of the Bankruptcy Act of 1898 (11 U.S.C. § 33),

provided that "[t]he court may revoke a discharge upon the application of a creditor, the trustee, the

United States attorney, or any other party in interest . . . ." The sparse legislative history associated

with § 727(d) fails to indicate why "party in interest" was deleted from the statute.  The omission

by Congress must be considered intentional, see generally H.R. Rep. No. 95-595 (1977); S. Rep. No.

95-989 (1978), but no legislative history has been found reflecting a legislative intent to bar a debtor

-18-

from moving to vacate a discharge. As earlier noted, Congress did not provide in § 727(d) that "only" the listed parties may seek to do so.

Moreover, one cannot reasonably argue that a debtor falls within the "associated group or series" listed in the statute in order to apply the Expressio Unius doctrine. The interests of a Chapter 7 debtor are not identical or even remotely similar to those of a trustee, creditors or the United States trustee. One of the primary purposes of the Code is to provide the honest but unfortunate debtor with relief from his or her debts. See Grogan v. Garner, 498 U.S. 279, 286-87 (1991); Rasmussen, 417 F.3d at 772. A debtor seeks relief under Chapter 7 for the purpose of receiving a discharge from his or her financial obligations in order to embark on a "fresh start." See generally Grogan, 498 U.S. at 286-87; Village of San Jose v. McWilliams, 284 F.3d 785, 790 (7th Cir. 2002). An eligible debtor can pursue a discharge and a "fresh start" under a Chapter 13 bankruptcy by payments on claims and even keep a home by paying current mortgage and arrears due over time. See In re Aberegg, 961 F.2d 1307, 1309-10 (7th Cir. 1992); 11 U.S.C. § 1301 et al. In contrast, the interests of a trustee, creditors and the United States trustee lie in ensuring that the debtor truly is honest and maximizing distribution of the debtor's assets to claimants, not in ensuring that the debtor actually receives a discharge. See McWilliams, 284 F.3d at 790. The general purpose of § 727(d) is to give the trustee, creditors, and the United States trustee a remedy against the dishonest debtor who should not be entitled to a financial "fresh start" due to some reprehensible behavior.

More to the point, Chapter 7 debtors are given a clear right to seek conversion to Chapter 13 "at any time" under § 706(a), and can try to save their homes or other property thereby. The Code should be viewed as encouraging and permitting debtors to pay their debts in Chapter 13 and thereby save property needed for their lives and families and should not be read to bar that possibility unless the statute clearly bars it.

In short, the different nature of interests of parties named in § 727(d) and the interests of debtors require conclusion that the statutory listing does not under rules of construction bar debtors from seeking to vacate their discharge.

### 3. Rule 60(b) Fed. R. Civ. P. Provides Authority for Debtors' Motion

While authorities have doubted the equitable power of a Bankruptcy Judge to revoke the Debtors' discharge on court's own volition, it has been held that Rule 60(b) Fed. R. Civ. P. (as adopted by Rule 9024 Fed. R. Bankr. P.) may permit courts to grant a debtor's request to vacate a discharge under certain circumstances. See e.g., Cisneros v. United States (In re Cisneros), 994 F.2d 1462, 1466 (9th Cir. 1993) (holding within the context of Chapter 13 case that the bankruptcy court was not foreclosed from relying on Rule 60(b) to vacate a Chapter 13 discharge); Mosby, 244 B.R. at 90; Aden, 237 B.R. at 725; In re Tardiff, 137 B.R. 83, 85-89 (Bankr. D. Me. 1992); In re Jones, 111 B.R. 674, 680 (Bankr. E.D. Tenn. 1990); In re Tuan Tan Dinh, 90 B.R. 743, 745 (Bankr. E.D. Pa. 1988); In re Long, 22 B.R. 152, 154 (Bankr. D. Me. 1982). While some precedent holds otherwise, United States v. Trembath (In re Trembath), 205 B.R. 909, 914 (Bankr. N.D. Ill. 1997) (court stated "that Rule 60(b) should not be generally applied to vacate discharge orders . . . ."); In re Fischer, 72 B.R. 111, 114 (Bankr. D. Minn. 1987) ("A discharge in bankruptcy is not analogous to an entry of judgment, subject to vacation under Fed. R. Civ. P. 60(b)."). The Seventh Circuit opinion in Rasmussen in the year 2005 certainly recognized the possibility of a Chapter 7 debtor using Rule 60(b) to obtain relief from a discharge order.

Under Rule 60(b), a party may seek relief from a final judgment, order or proceeding based on:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or

-20-

extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. Pro. 60(b). This court's research has not uncovered any published decision that relied on or even discussed "newly discovered evidence" as the basis for revoking a discharge. See e.g., Mosby, 244 B.R. at 90 (the court omitted "newly discovered evidence" from its application of Rule 60(b) to the debtor's request to vacate the discharge.) Yet Debtors' Chapter 7 discharge in this case may be vacated on that basis.

Rule 60(b)(2) is designed to allow modification of a prior ruling when evidence comes to light after a ruling that could not have been learned earlier. See Bell v. Eastman Kodak Co., 214 F.3d 798, 801 (7th Cir. 2000). Relief based on "newly discovered evidence" is extraordinary in nature and will only be granted in exceptional circumstances. Provident Sav. Bank v. Popovich, 71 F.3d 696, 698 (7th Cir. 1995). As the Seventh Circuit Court stated in Publicis Comme'n v. True N. Comme'ns, Inc., "A party needs awfully good stuff to win a Rule 60(b)(2) motion." 206 F.3d 725, 730 (7th Cir. 2000). In this circuit, a movant must prove that:

(1) the evidence was discovered following trial;
(2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;
(3) the evidence is not merely cumulative or impeaching;
(4) the evidence is material; and
(5) the evidence is such that a new trial would probably produce a new result.

See Jones v. Lincoln Elec. Co., 188 F.3d 709, 732 (7th Cir. 1999). A motion premised on Rule 60(b)(2) must fail if any one of these prerequisites is not satisfied. See In re Wildman, 859 F.2d 553, 558 (7th Cir. 1988).

-21-

In the present case, the newly discovered evidence is the appraisal that the Trustee obtained post-petition. Shortly before seeking relief under Chapter 7, the Debtors received an appraisal that valued their real estate at $104,000. This number is about half than the appraisal obtained by the Trustee. The Debtors had no way of knowing at the time they filed their Chapter 7 petition that the market value of their property would increase so drastically by the time the Trustee had their property appraised and this Court held a valuation hearing. It was not until the Trustee obtained his appraisal that the Debtors discovered that their property was being appraised at a value drastically higher than the evidence they had in their possession at the time the Chapter 7 case was filed.

Although the Trustee argues that the Debtors may have purposely understated the market value of their home by more than $100,000, evidence on the record did not demonstrate any such malicious intent. No evidence has shown that the Debtors' former counsel purposely sought out a low market value from the appraiser in an attempt to pull the wool over the Trustee's eyes to the detriment of creditors. This is not a situation where the Debtors have been shown to have relied knowingly on a phoney pre-petition market valuation that was lower than other appraisals they knew were available. The difference in value between their appraisal and the Court's finding of increased value reflects more of market mobility and uncertainty, not deception. Had Debtors received a pre-bankruptcy market valuation that was double of that actually received by them prior to filing of their Chapter 7 case, they could have sought relief under Chapter 13 from the very beginning or, at the very least, they would have been able to make a well informed decision as to whether or not they wanted to have a Chapter 7 trustee sell their home. A third and more likely possibility is that had the Debtors known of the increased value they could have opted not to seek any form of bankruptcy relief. Based on the property's market value, there is a significant amount of equity that the Debtors might have been able to borrow against to satisfy their creditors and deal with their financial

-22-

problems. In this context the Debtors' motion to vacate discharge and convert to Chapter 13 is seen as being made in good faith.

An alternative basis for allowing relief under Rule 60(b)(5) is because it is no longer equitable that the discharge should have further viability. A series of unusual circumstances have caught debtors in a trap through no fault of their own. They should have a chance to save their house.

Therefore, the Debtors' Chapter 7 discharge will be vacated and they will be permitted to convert their Chapter 7 case to Chapter 13.

## C.    <u>Reconversion Denied</u>

The Trustee moved to have the Debtors' newly converted Chapter 13 case reconverted into a Chapter 7 case. He argues that reconversion is warranted because "cause" exists under § 1307 of the Code. This argument is without merit.

Section 1307(c) of the Code provides that "the court may convert a case under this chapter to a case under chapter 7 of this title, . . . , for cause." 11 U.S.C. § 1307(c). The Trustee specifically argues that "cause" exists because the Debtors' Chapter 13 original petition was filed in bad faith.

Under Seventh Circuit authority, several factors should be considered when deciding whether a Chapter 13 petition was filed in bad faith, including:

    a. the nondischargeability of the debt;
    b. the time of the filing of the petition;
    c. how the debt arose;
    d. the debtor's motive for filing the petition;
    e. how the debtor's actions affected creditors;

-23-

f. the debtor's treatment of creditors both before and after the petition was filed;
g. whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Sidebottom, 430 F.3d at 899; In re Love, 957 F.2d 1350, 1359 (7th Cir. 1992) (same).

Furthermore, in evaluating whether a petition was filed in good faith, the inquiry looks at both subjective and objective criteria. The good faith inquiry ". . . is both subjective and objective. That is, both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry." Love, 957 F.2d at 1357.

Some courts have employed a "good faith" standard when evaluating whether a conversion is proper. See e.g., Pakuris, 262 B.R. at 335 ("It follows that conversion to a chapter 13 case must likewise be sought in good faith since the bankruptcy court can reconvert the case to chapter 7 under 11 U.S.C. § 1307(c) for cause."). Other opinions suggest that a court can sua sponte reconvert a case back to a Chapter 7 after recognizing an "absolute right" to convert where the petition was filed in bad faith. See Finney, 992 F.2d at 45.

However, converting the Debtors' case back into a Chapter 7 on Trustee's motion is not presently warranted.

First, it has not been suggested that any debts that could have been excepted from a Chapter 7 discharge will now be subject to the broad discharge to be granted in the Chapter 13 cases. Compare 11 U.S.C. §§ 523, 727 and 11 U.S.C. § 1328.  Secondly, any Chapter 13 plan proposed by the Debtors must provide unsecured claimants with an amount "no less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7" in order to be confirmed. See 11 U.S.C. § 1325(a)(4). Based on the present record, the only non-exempt asset

-24-

that the Trustee was seeking to use to pay unsecured claimants was that portion of the non-exempt

equity in the Debtors' house. As of the petition date, the Debtors listed $49,160.63 in unsecured

claims. Since it has been found that the property is worth $200,000, the Debtors have approximately

$84,000 in unprotected equity once deductions are made for the unpaid mortgage and the Debtors'

homestead exemptions. As such, the Debtors must pay claimants under a confirmable Chapter 13

plan 100% of unsecured claims filed, the same amount those creditors would have received if the

Chapter 7 Trustee was permitted to sell the property. Creditors will, of course, have to wait longer

for their money in a Chapter 13 case.

The Chapter 7 Trustee might have been prejudiced if there were lack of compensation for

his work expended while employed as the trustee. However this prejudice was eliminated when the

Debtors agreed that the Trustee's fee application will be allowed in full as a claim in their Chapter

13 case.[4]

Accordingly, "cause" is lacking to warrant the Debtors' case being reconverted to Chapter 7.

The Trustee's motion to reconvert the Debtors case back to Chapter 7 will therefore be denied.

---

[4] During the hearing held November 7, 2006, a question was raised from the bench as to whether a trustee is
entitled to some form of compensation when a debtor converts a Chapter 7 case while the trustee trying to liquidate assets
for distribution to creditors. Section 326 of the Code is clear in stating that trustee's compensation award is premised
on rendering services that ultimately result in the trustee disbursing money received into the estate to claimants. 11
U.S.C. § 326(a). When a case is converted under Section 706, the services of the chapter 7 trustee are terminated and
the trustee essentially becomes another creditor. See 11 U.S.C. § 348(e); Cable v. Ivy Tech State College, 200 F.3d 467,
474 (7th Cir. 1999). "To the extent unpaid compensable services have been rendered and expenses incurred in the
Chapter 7 case, the Chapter 7 trustee or his counsel become claimants of the debtor's Chapter 13 estate." In re Wells,
87 B.R. 732, 736 (Bankr. N.D. Ga. 1988).
    Although the Debtors and the Trustee entered into an agreement as to how much he is to be compensated, it
is important to address this issue. In such a situation, the Chapter 7 trustee should be entitle to some level form of
compensation beyond the minimum provided in Section 330(b) of the Code. See In re Colburn, 231 B.R. 778, (Bankr.
D. Or. 1999) (court held that Chapter 7 trustee and his counsel was entitled to reasonable compensation and expense
reimbursement beyond the statutory minimum in a converted case when the case was converted prior to the Trustee
making any distribution). While it is not appropriate to state a bright line rule as to when such compensation is
warranted, trustees in this circumstance might be invited to submit fee applications reflecting their efforts and seek
reasonable compensation in accordance with Section 330 of the Code.

## CONCLUSION

In light of the foregoing, by separate order, the Chapter 7 discharge entered in this case has

been vacated, the case has been converted to Chapter 13, and Trustee's motion to reconvert the

Debtors' Chapter 13 case back into Chapter 7 has been denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this ___11___ day of January 2007.